NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANDREW DALE FARIS,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2024-2004, 2024-2005

---

Petitions for review of the Merit Systems Protection Board in Nos. CH-0353-20-0494-I-1, CH-0752-20-0205-I-1.

---

Decided:  September 11, 2025

---

ANDREW DALE FARIS, Indianapolis, IN, pro se.

KELLY WINSHIP, Office of the General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

---

Before CHEN, LINN, and HUGHES, *Circuit Judges*.

PER CURIAM.

Andrew Faris petitions for review of two final orders from the Merit Systems Protection Board (Board), which dismissed his two appeals for lack of jurisdiction.[1] *Faris v. United States Postal Serv.*, No. CH-0752-20-0205-I-1, 2024 WL 1855117 (M.S.P.B. Apr. 26, 2024) (*Final Order I*); *Faris. v. United States Postal Serv.*, No. CH-0752-20-0205-I-1, 2020 WL 1678108 (Apr. 3, 2020) (*Initial Decision I*)[2]; *Faris v. United States Postal Serv.*, No. CH-0353-20-0494-I-1, 2024 WL 1911387 (M.S.P.B. Apr. 30, 2024) (*Final Order II*); *Faris v. United States Postal Serv.*, No. CH-0353-20-0494-I-1, 2021 WL 779667 (Feb. 23, 2021) (*Initial Decision II*). [3] We *affirm*.

## BACKGROUND

Mr. Faris worked as a Laborer Custodial for the United States Postal Service (USPS). In 2018, he received a warning letter based on several instances of unscheduled leave and going absent without leave (AWOL). Despite receiving this warning letter, Mr. Faris kept taking unscheduled absences. In light of these repeated infractions, the USPS issued him a Notice of Proposed Removal.

On November 19, 2019, Mr. Faris, through the help of his union representative, entered into a Last Chance Agreement (LCA), which presented a "final opportunity for

---

[1]    In both final orders, the full Board denied Mr. Faris's petition for review, thereby making the administrative judge's initial decision final. *See* 5 C.F.R. § 1201.113(b).

[2]    Because the electronic version of this decision lacks page designations, we employ the pagination used in the decision at SAppx. 10–25. "SAppx" refers to the appendix filed with the government's informal brief.

[3]    Because the electronic version of this decision lacks page designations, we employ the pagination used in the decision at SAppx. 75–96.

[Mr. Faris] to salvage his career with the [United States] Postal Service." *Initial Decision I*, 2020 WL 1678108, at 3 (citation omitted). The LCA provided specific terms concerning attendance requirements: Mr. Faris could have (1) no more than three unscheduled absences during any six month period, and (2) no instances of going AWOL—any violation of these terms would result in removal. *Id.* Per the LCA, Mr. Faris also waived his right to appeal to the Board. *Id.*

The USPS reported Mr. Faris as AWOL on November 20, 2019 for over 3 hours. Accordingly, on December 2, 2019, the USPS proposed Mr. Faris's removal.

While that proposal was pending, however, he sustained injuries in an off-duty car accident on December 14, 2019. And because these injuries prevented Mr. Faris from carrying out his normal job functions, his first-line supervisor, Ms. Jenkins, sent over a light duty request form. She advised him to have his physician complete the form.

On January 3, 2020, Mr. Faris emailed Ms. Jenkins and Mr. Vaughn, the District Maintenance Manager, claiming to have attached the filled-out light duty request form. He also spoke to Ms. Jenkins on the phone later that day and claimed that during the call "she told him he was fired." *Initial Decision II*, 2021 WL 779667, at 2. On February 3, 2020, Mr. Vaughn issued a decision to remove Mr. Faris effective February 14, 2020. *Id.*

Mr. Faris filed two appeals to the Board. In his first appeal, he contested his removal. *See Initial Decision I*, 2020 WL 1678108, at 1. The Board dismissed his appeal for lack of jurisdiction, explaining that Mr. Faris waived his appeal rights in the LCA.

In his second appeal, Mr. Faris focused on the period of time between January 3, 2020—when he supposedly heard over the phone that he was fired—and February 14, 2020—his actual termination date. The Board construed

Mr. Faris's argument as raising two distinct challenges: (1) a restoration-to-duty claim, *see* 5 U.S.C. § 8151, and (2) a constructive suspension claim. The Board dismissed both claims for lack of jurisdiction, explaining that he failed to establish, with preponderant evidence, at least one element of each claim. *See Initial Decision II*, 2021 WL 779667, at 4–14.

The full Board denied both of Mr. Faris's petitions for review. *See Final Order I*, 2024 WL 1855117, at *2; *Final Order II*, 2024 WL 1911387, at *2. He now petitions for our review, and we granted Mr. Faris's motion to consolidate both appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review de novo the Board's determinations concerning jurisdiction but review for substantial evidence factual findings that underlie the Board's jurisdictional analysis. *Younies v. MSPB*, 662 F.3d 1215, 1218 (Fed. Cir. 2011). We first address Mr. Faris's challenges to his removal, before addressing Mr. Faris's constructive suspension claim.[4]

## I. Removal

"It is settled that an employee can waive the right to appeal in a last-chance agreement." *Gibson v. Dep't of Veterans Affs.*, 160 F.3d 722, 725 (Fed. Cir. 1998). That said, an employee can still overcome a waiver if he (1) proves compliance with the last-chance agreement, (2) proves the agency breached the agreement, or otherwise (3) proves he did not knowingly and voluntarily enter into the agreement. *Buchanan v. Dep't of Energy*, 247 F.3d 1333, 1338 (Fed. Cir. 2001).

---

[4]    Mr. Faris does not challenge the Board's decision on his restoration-of-duty claim. *See generally*, Pet'r's Informal. Br.

Mr. Faris, on appeal, first claims to have entered into the LCA unknowingly and involuntarily. *See* Pet'r's Informal Br. 12.[5] We are not persuaded.

For one, Mr. Faris never raised this argument to the Board. *See Initial Decision*, 2020 WL 1678108, at 6. And we decline to consider it in the first instance on appeal. *See Bosley v. MSPB*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court. Thus, if the party fails to raise an issue in the administrative proceeding or raises an issue for the first time in a petition for review by the full Board, this court will not consider the issue.").

Moreover, Mr. Faris offers no evidence—let alone preponderant evidence—supporting his lack of knowledge or involuntariness in entering into the LCA. Instead, he explains that he "did not think the postal service was serious" in enforcing the LCA because of "a past practice of non-enforcement." Pet'r's Informal Br. 12. But if anything, believing that the USPS would not enforce certain terms of the LCA presupposes an awareness of those terms in the first place.

Mr. Faris next alleges that he never went AWOL, and therefore, fully complied with the LCA. *Id.* at 15–17. He contends that, although the USPS reported him as AWOL for 3.51 hours, the USPS's time conversion table enumerates only 0.50 or 0.52 as options for calculating hours—0.51 does not exist. So because one cannot go AWOL for 3.51 hours, Mr. Faris argues, he could not have gone AWOL at all. But again, he never raised this argument to the Board, so we decline to consider it on appeal. *See Bosley*, 162 F.3d at 668. In any event, we find Mr. Faris's position

---

[5]    Because Mr. Faris's brief lacks page numbers, we employ the ECF pagination.

unpersuasive because, among other issues, he never explains why the USPS must always follow the referenced timetable's precision when computing time.

## II.  Constructive Suspension

Aside from challenging his ultimate removal, Mr. Faris also contended, before the Board, that the USPS prevented him from working between January 3, 2020 and February 14, 2020.  The Board construed this argument as a constructive suspension claim.

"'[C]onstructive suspensions' are within the jurisdiction of the MSPB." *Perez v. MSPB*, 931 F.2d 853, 855 (Fed. Cir. 1991).  But to establish jurisdiction over a constructive suspension claim, the employee must prove, by preponderant evidence, that (1) he lacked a meaningful choice in the matter and (2) the agency's wrongful actions deprived him of that choice.  *See Rosario-Fabregas v. MSPB*, 833 F.3d 1342, 1346 (Fed. Cir. 2016).

Mr. Faris, on appeal, has not identified any wrongful actions undertaken by the USPS.  To the extent Mr. Faris points to Ms. Jenkins' statements during their phone call on January 3, 2020 as a premature termination, and thus, a wrongful action, we disagree.  The Board found it unlikely that Ms. Jenkins, on that phone call, actually terminated Mr. Faris, or that she otherwise pressured Mr. Faris into believing that he was fired.  And to reach that finding, the Board relied on a credibility determination.  *See Initial Decision II*, 2021 WL 779667, at 10 ("As an initial matter, I find that Appellant's testimony that Ms. Jenkins told him he was fired on January 3, 2020 lacks credibility.").  "[C]redibility determinations by the [B]oard are 'virtually unreviewable.'" *Wright v. U.S. Postal Serv.*, 183 F.3d 1328, 1334 (Fed. Cir. 1999) (citation omitted).

CONCLUSION

We have considered Mr. Faris's remaining arguments and find them unpersuasive.[6] We therefore *affirm*.

**AFFIRMED**

COSTS

No costs.

---

[6]     Mr. Faris also filed a motion requesting us to (1) take judicial notice of emails between him and Mr. Vaughn following his phone call with Ms. Jenkins and to (2) deny the Government's motion for oral argument because the response brief was supposedly untimely. *See* ECF No. 28. In light of our court's clarification on the timing deadlines, *see* ECF. No. 31, he withdrew the second basis, *see* ECF No. 31.

We grant Mr. Faris's motion to take judicial notice. For the reasons discussed *supra* Discussion Section II, however, we find Mr. Faris's reliance on these emails unpersuasive.